1  Donald S. Burris (SBN 68523)
   A. George Glasco, Of Counsel (SBN 65935)
2  BURRIS, SCHOENBERG & WALDEN, LLP
   12121 Wilshire Boulevard, Suite 800
3  Los Angeles, California 90025
   Telephone: (310) 442-5559
4  Facsimile: (310) 442-0353
   don@bswlaw.net
5
   Tiffany N. Comprés (Admitted Pro Hac Vice)
6  SANDLER, TRAVIS & ROSENBERG P.A.
   1000 N.W. 57TH Court, Suite 600
7  Miami, Florida 33126
   Telephone: (305) 894-1012
8  Facsimile: (305) 267-5155
   tcompres@strtrade.com
9
   Attorneys for Plaintiff/Counter-Defendant Atlantix Commodities, LLC
10

11              UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF CALIFORNIA

12 | ATLANTIX COMMODITIES, LLC, | CASE NO. 1:18-cv-01125-DAD-SKO
   | a New York Limited Liability |
13 | Corporation, | PLAINTIFF/COUNTER-DEFENDANT
   | | ATLANTIX COMMODITIES, LLC'S
14 | Plaintiff, | NOTICE OF MOTION FOR SUMMARY
   | | JUDGMENT AND MOTION FOR
15 | v. | SUMMARY JUDGMENT
16 | WHOLESOME NUT COMPANY, INC., | [*Separate Statement of Undisputed Material
   | a California Corporation, | Facts; Declarations of Miryam Rosenblum and
17 | | Donald S. Burris, Esq.; and Proposed
   | Defendant. | Judgment filed concurrently with the Motion*]
18
   | | DATE: August 7, 2019
19 | | TIME:  9:30 a.m.
   | | COURTROOM: 7, 6th Floor
20 | | JUDGE: Hon. Magistrate Judge Sheila K. Oberto
21 | | Trial Date:  May 27, 2020
   | | Action Filed:  August 21, 2018
22 | AND ALL RELATED |
   | COUNTERCLAIMS |
23 | |
24

25

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 31, 2019, or as soon thereafter as the matter may be heard in the above-entitled Court, located at 2500 Tulare Street, Fresno, CA 93721, Plaintiff/Counter-Defendant Atlantix Commodities, LLC ("Atlantix" or "Plaintiff") will and hereby does move the Court for an order granting summary judgment in its favor and against the Defendant/Counter-Plaintiff Wholesome Nut Company, Inc. ("Wholesome Nut" or "Defendant") on all claims and counter-claims, pursuant to Federal Rule of Civil Procedure 56 and Local Rules of Practice for the United States District Court, Eastern District of California, ("L.R.") 260.   The instant Motion is based on this Notice, the Memorandum of Points and Authorities filed herein, the Separate Statement of Undisputed Material Facts (with exhibits), the Declarations of Miryam Rosenblum and Donald S. Burris, Esq. (with exhibits), the pleadings previously filed in this action and any oral argument permitted at the hearing on this Motion.

This Motion is made following the good faith meet-and-confer conference of counsel, which took place by telephone on June 13, 2019 between myself and Steven Imburg, Esq., counsel for the Defendant in this case in order to thoroughly discuss the substance of the instant Motion and any potential resolution, but no resolution was achieved, and meet-and-confer efforts have been exhausted.

Dated:  June 28, 2019                    By: s/ Donald S. Burris
                                         Donald S. Burris, Esq. (SBN 68523)

                                         *Attorney for Plaintiff/Counter-Defendant*
                                         *Atlantix Commodities, LLC*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... 3

TABLE OF AUTHORITIES ...................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES .............................. 5

    I.          INTRODUCTION .................................................... 5

    II.        SUMMARY OF FACTS .......................................... 6

    III.      LEGAL STANDARD .............................................. 9

    IV.      ARGUMENT ......................................................... 10

         A.  *Summary Judgment Should be Granted in Favor of Atlantix on the First and Second Causes of Action for Breach and Enforcement of the Written Contract and Guarantee Because The Product Shipped By Wholesome Nut Was Not in Compliance with the Contract or Guarantee* ................................................ 10

         B.  *Summary Judgment Should be Granted in Favor of Atlantix on the Third Cause of Action for Breach of UCC § 2-313.* ................................................ 13

         C.  *Summary Judgment Should be Granted in Favor of Atlantix on Wholesome Nut's First Counterclaim for Breach of Contract Because, Even Taken in the Light Most Favorable to Wholesome Nut, Atlantix Is Not Liable for Any Further Payments on a Shipment of Walnuts Adulterated with Metal Fragments.* ................................................ 14

         D.  *The Court Should Award Atlantix its Attorney's Fees and Costs Incurred in Bringing This Action*……………………………………………………15

    V.       CONCLUSION ..................................................... 17

CERTIFICATE OF SERVICE ................................................................ 18

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3    Am. Suzuki Motor Corp v. Superior Court, 37 Cal.App. 4th 1291 (1995) ................................ 12

4    Anderson v. Liberty Lobby, Inc., 447 U.S. 242 (1986) ........................................................ 10, 11

5    Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974) ....................................................... 16

6    Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)................................. 10

7    Federal Deposit Ins. Corp. v. Air Florida System, Inc., 822 F.2d 833 (9th Cir. 1987) ............... 15

8    Graham v. DaimlerChrysler Corp., 34 Cal.4th 553 (2004) ........................................................ 17

9    Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) ........................................ 16

10   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .................................. 10

11   Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) ................ 16

12   Mocek v. Alfa Leisure, Inc., 114 Cal.App. 4th 402 (2003) ........................................................ 12

13   Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964 (1968)........................... 16

14   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626 (9th Cir.1987) ............. 10

15   United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) .................... 10

16

### **Statutes, Rules, and Treatices**

17   21 U.S.C. § 331 ........................................................................................................................... 13

18   California Commercial Code § 2313 ...................................................................................... 14, 15

19   California Commercial Code § 2314 .......................................................................................... 12

20   California Health & Safety Code § 110620 ................................................................................. 13

21   California Penal Code § 382 ....................................................................................................... 13

22   FRCP 56....................................................................................................................................... 10

23   4 B.E. Witkin, Summary of California Law, Sales § 97 (10th ed. 2005) .................................... 12

24

25

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Stripped to its essentials, this Motion (and indeed this entire litigation) can be reduced to

4 one simple and irrefutable principle—metal fragments do not naturally occur in shipments of

5 nuts.   Indeed, when pieces of metal appear in shipments of nuts intended for human

6 consumption, it is safe to assume that something has gone terribly wrong.   Yet that is precisely

7 what occurred here.  Defendant/Counter-Plaintiff Wholesome Nut Company, Inc. ("Wholesome

8 Nut" or "Defendant") sold shelled walnuts adulterated with metal fragments to

9 Plaintiff/Counter-Defendant Atlantix Commodities, LLC ("Atlantix" or "Plaintiff"), making

10 those nuts unfit for human consumption.   However, when confronted with evidence that the

11 shipment of nuts contained metal fragments, and given the opportunity to rectify the problem,

12 Wholesome Nut's representatives failed and refused to either replace the shipment with

13 unadulterated nuts or to reimburse Atlantix for the purchase price.  As a result, Atlantix not only

14 suffered significant damages in the form of having to quickly replace the product at its own

15 expense but was also forced to incur expenses for warehousing tainted nuts.

16      At its core, this action seeks recompense for the failure of Wholesome Nut to comply

17 with its business and public-health obligations to supply unaltered nuts to its wholesaler-clients,

18 and ultimately to the public, in a manner that insures that they are fit for public consumption.  In

19 this case, Wholesome Nut not only acted in a manner inconsistent with these basic health and

20 safety obligations but, as shown below, when confronted with the unsafe products, blatantly

21 refused to rectify the problem or honor its obligations.   Atlantix has been compelled to

22 commence this litigation both to receive the benefit of its bargain by being reimbursed for its

23 damages and also to protect the public from future potential shipments of adulterated food

24

25

1  products from Wholesome Nut.   By seeking summary judgment now, Atlantix hopes to

2  eliminate the need to incur substantial future additional fees and costs and also clear this matter

3  from the Court's docket.   Atlantix asks for summary judgment to be granted in its favor and

4  against Wholesome Nut on all Claims and Counterclaims.   Atlantix also requests that this Court

5  set a briefing schedule for the filing of Atlantix's request for Attorney's fees and costs.

6  **II.    SUMMARY OF FACTS**

7        Plaintiff Atlantix, a New York limited liability company, is an experienced American

8  importer and trader of responsibly sourced nuts, seeds, spices, and dried fruit products from top-

9  tier farms and plantations across the globe.   In fact, Atlantix is a leader in the business of buying

10  and selling wholesale food products, including various forms of nut products.   When one of

11  Atlantix's clients—Hampton Farms—required walnuts for use in its products, Atlantix turned to

12  Defendant Wholesome Nut, a California corporation processing, packing, and selling California

13  almonds and walnuts provided by Wholesome Nut's network of growers.   Wholesome Nut

14  advertises its "strict quality control" and that they "couple innovative technology with

15  experience, success, and commitment, to . . . guarantee food safety."   Its website touts that

16  Wholesome Nut is "committed to quality" and that:

17             We [*i.e.*, Wholesome Nut] set our standards high. Our rigorous
18             quality and food safety standards, ongoing education, sanitary
             measures, technology and commitment to quality and food safety,
             allow us to stand confidently behind our products. Attention to
19             detail matters. Food safety matters. Our relationships matter.
             Because our reputation in the industry also matters, Wholesome
20             Nut Company is delighted to share success with its growers and
             buyers by delivering on our promises.

21        On or about July 25, 2017, Atlantix and Wholesome Nut entered into a contract (entitled

22  "Sales Contract 2016 Crop" or simply the "Contract") whereby Atlantix agreed to purchase

23  42,000 pounds of "California Walnuts -Shelled Light Halves & Pieces 20%" from Wholesome

24

25

Nut at a price of $3.100/lb. for an aggregate price of $130,200.00.  Pursuant to the Contract, the nuts would be "NAPASOL PASTEURIZED" by Wholesome Nut (*i.e.*, Napasol is a leading equipment supplier for the pasteurization of low-moisture food products like nuts).  The nuts would be packed into 1,680 cardboard cases weighing 25 lbs. each and would be shipped directly from Wholesome Nut's plant to Hampton Farms, located in Springfield, Massachusetts.

Contemporaneously with the execution of the Contract, Wholesome Nut and Atlantix also entered into the Letter of Guarantee, dated August 14, 2017 (the "Guarantee"), which provides that Wholesome Nut guarantees to Atlantix, among other things, that:

> "all food…delivered by [Wholesome Nut]…shall, at the time of delivery, comply in all respects with the Federal Food Drug and Cosmetic Act…and are not adulterated…and that none of the products are articles which may not, under the Act or applicable law…be introduced into interstate commerce…."

> "[Wholesome Nut] guarantees that all products delivered by [Wholesome Nut]…shall fully comply with all applicable law, rules, and regulations."

As required by the Contract, prior to shipping the entire order to Hampton Farms, Wholesome sent a representative sample of walnuts in advance for evaluation.  No forms of adulteration, such as metal fragments, were found in the sample.  Accordingly, Atlantix paid Wholesome Nut for the walnuts to be shipped to Hampton Farms.

On January 25, 2018, a representative of the purchaser Hampton Farms conducted an inspection of the delivered products and discovered a number of dangerous metal fragments in the products.  Hampton also sent an inspection report to Atlantix, which contained the following photos showing the type of metal found in the shipment:




As a result of the discovery of the metal fragments, Hampton Farms' management reasonably rejected Wholesome Nut's delivery of walnuts.  Atlantix immediately informed Wholesome Nut of the rejection and forwarded the Inspection Report to Wholesome.  Atlantix expeditiously requested that Wholesome Nut replace the cases of nuts containing metal fragments, but from that day to the present, Wholesome Nut has refused to provide a reimbursement or any replacement product.  As a result, Atlantix was forced to incur the cost of the tainted nuts under the Contract, the cost of purchasing product to replace the tainted product sent to Hampton Farms, and the cost for warehousing a portion of the tainted nuts.  The total amount expended by Atlantix as clarified in the Declaration on Miryam Rosenblum was at least **$146,997.50**.

On August 20, 2018, Atlantix filed a four-count Complaint (the "Complaint") against Wholesome Nut seeking damages for (1) Breach of Written Contract, (2) Enforcement of Written Guarantee, (3) Violation of UCC § 2-313 (Cal. Com. Code § 2313), and (4) Attorneys' Fees for Protection of the Public Cosmetics Law.  See D.E. 1.  On October 9, 2018, Wholesome Nut answered by denying the claims in the Complaint, filed eighteen affirmative defenses, and counterclaimed for breach of contract alleging that Atlantix still owed a balance of $16,275 (see D.E. 7) (the "Counterclaim").  Atlantix answered the Counterclaim, denying any remaining debt owed to Wholesome Nut.  See D.E. 9.  A scheduling order was entered on January 25, 2019,

setting a 1-to-3-day trial for May 27, 2020, and providing for the completion of discovery and the filing of dispositive motions before the end of 2019.  See D.E. 17.

As will be shown below, however, it is unnecessary to wait for the dispositive motion deadline to consider and resolve this matter by summary judgment—the material facts are already known and undisputed.

## III.   LEGAL STANDARD

Summary judgment under FRCP 56(c) is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims and defenses." Celotex v. Catrett, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Atlantix, as the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248-49 (1986).  If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987) (quoting Rule 56(e) and citing Celotex, 477 U.S. at 323); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In reviewing the Motion, the Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  However, the mere existence of some small amount

of evidence in support of the non-moving party's position is insufficient to overcome summary judgment:   "There must be evidence on which the jury could reasonably find for [the nonmoving party]."   Anderson, 477 U.S. at 252.  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 248-49.  This Court thus applies to a motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.  As will be conclusively shown below, the undisputed evidence is so one-sided in favor of Atlantix that the only reasonable outcome is complete summary judgment in Atlantix's favor and an award of allowable fees and costs in accordance with applicable law.

## IV.   **ARGUMENT**

### A. **Summary Judgment Should be Granted in Favor of Atlantix on the First and Second Causes of Action for Breach and Enforcement of the Written Contract and Guarantee Because The Product Shipped By Wholesome Nut Was Not in Compliance with the Contract or Guarantee.**

Fundamentally, this action is a breach of contract case.  The Contract signed in July 2017 provided that Wholesome Nut would sell to Atlantix 42,000 pounds of California walnuts at $3.100 per pound for an aggregate price of $130,200.00.  The nuts would be shipped directly from Wholesome Nut's plant to the end user who would use the nuts in food products.  Wholesome Nut, having guaranteed the walnuts quality, sourced the walnuts, processed them, and packed them in cardboard cases.  When the cases were opened by the end user, they contained metal fragments rendering the nuts unfit for human consumption.  Accordingly,

Wholesome Nut has breached the Contract and the Guarantee.  Atlantix asks this Court to grant summary judgement in its favor on the First and Second Causes of Action.

  *1. Wholesome Nut has breached the implied warranties of merchantability and of fitness for intended purpose.*

  An implied warranty of merchantability, present in all contracts for the sale of goods, guarantees that the goods are at least "(a) [able to] pass without objection in the trade under the contract description;" "(b) [i]n the case of fungible goods, are of fair average quality within the description;" "(c) [a]re fit for the ordinary purposes for which such goods are used;" "(d) [r]un, within the variations permitted by the agreement, [and are] of even kind, quality and quantity within each unit and among all units involved;" "(e) [a]re adequately contained, packaged, and labeled as the agreement may require;" and "(f) conform to the promises or affirmations of fact made on the container or label if any."  Cal. Com. Code § 2314.  The implied warranty of merchantability arises by operation of law and "provides for a minimum level of quality."  Am. Suzuki Motor Corp v. Superior Court, 37 Cal.App. 4th 1291, 1295-96 (1995).  Thus, a plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use."  Mocek v. Alfa Leisure, Inc., 114 Cal.App. 4th 402, 406 (2003) (citing Cal. Com. Code § 2314(2)).  Privity of contract between plaintiff and defendant is also required in actions for breach of warranty, and such privity is present where the buyer sues the seller.  See 4 B.E. Witkin, Summary of California Law, Sales § 97 (10th ed. 2005).

  In this action, Atlantix and Wholesome Nut are in direct privity of contract, as buyer and seller.  Pursuant to the Contract, Atlantix paid Wholesome Nut, who shipped the goods to the end user, Atlantix's client Hampton Farms.  The nuts that were actually shipped—unlike the sample provided—were adulterated with fragments of metal.  These nuts were already

pasteurized, shelled, and *supposedly* fit for human consumption.  However, walnuts containing metal fragments are clearly *not* fit for human consumption.  Thus, the shipments did *not* provide for a minimum level of quality or possess even the most basic degree of fitness for ordinary use.  Thus, the implied warranties of merchantability and fitness have been breached.   Summary judgment should be granted on these Claims in favor of Atlantix.

   2.  *Wholesome Nut has breached the express language of the Guarantee.*

As discussed above, contemporaneously with the execution of the Contract, Wholesome Nut and Atlantix also entered into the August 14, 2017 Guarantee, which provides that Wholesome Nut guarantees to Atlantix, among other things, that all food delivered by Wholesome Nut "shall, at the time of delivery, comply in all respects with the Federal Food Drug and Cosmetic Act . . . and are not adulterated . . . and that none of the products are articles which may not, under the Act or applicable law, . . . be introduced into interstate commerce."  The Guarantee also states that Wholesome Nut "guarantees that all products delivered by [Wholesome Nut] … shall fully comply with all applicable law, rules, and regulations."  Clearly, the walnuts that were sent to the end user *were adulterated* with metal fragments, and thus, the guarantee was violated.

Moreover, despite Wholesome Nut's guarantee, the nuts delivered clearly did *not* fully comply with all applicable law, rules, and regulations.  The Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 331, provides in describing the reach of the statute that: "The following acts and the causing thereof are prohibited: (a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."  Here, Wholesome Nut introduced into interstate commerce crates of walnuts intended for human consumption that were adulterated with dangerous metal

fragments, violating the FDCA.  California Penal Code §§ 382 and 383 make selling an adulterated food product to an unknown purchaser a criminal misdemeanor.  California Health & Safety Code §§ 110620 and 110630 also make it unlawful to sell or put into commerce adulterated food.  Wholesome Nut clearly violated these California laws when it sold, processed, packed, and shipped cardboard cases of shelled walnuts tainted with metal fragments, and the public must be protected from such misconduct.  As the product sold did not fully comply with all applicable law, rules, and regulations as Wholesome Nut guaranteed, the Guarantee provide by Wholesome Nut in connection with the Contract was breached and should be enforced. Again, for this reason, summary judgment should be granted on these Claims in favor of Atlantix.

**B. Summary Judgment Should be Granted in Favor of Atlantix on the Third Cause of Action for Breach of UCC § 2-313.**

Section 2-313 of the Uniform Commercial Code on "Express Warranties by Affirmation, Promise, Description, Sample" states that "express warranties by the seller are created as follows:"

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

This part of the Uniform Commercial Code is incorporated into California law at California Commercial Code § 2313, containing identical language.  Thus, under operative law, Wholesome Nut warranted that the shipments of nuts would conform to the sample it sent for approval.

The Contract expressly states under "OTHER CONDITIONS" that the sale is "Subject to Sample Approval and COA."  The Contract and Guarantee do not contain any language disclaiming the warranties they created.  To the contrary, as required by the Contract, prior to

shipping the entire order to Hampton Farms, Wholesome sent a representative sample of walnuts in advance for evaluation.   No forms of adulteration, such as metal fragments, were found in the sample.   Accordingly, Atlantix paid for the walnuts, and the cardboard cases of walnuts, which would ultimately be found to contain metal fragments, were shipped to the end user, Hampton Farms.   The shipment tainted with metal fragments violated the express warranty created under UCC Section 2-313 that the product shipped would conform to the approved sample.

Indeed, when Wholesome Nut provided a representative sample of the walnuts for prior approval, it created an express warranty that the whole of the goods would conform to the sample (*i.e.*, that all of the goods for sale would not be adulterated with metal fragments). Moreover, when Wholesome Nut executed the Guarantee in favor of Atlantix, it promised to Atlantix (and created an express and enforceable warranty) that the goods would meet the requirements of the Guarantee, *i.e.*, that they would comply with all applicable law and also not be adulterated.   Wholesome Nut's breach of the express warranty it provided under California Commercial Code § 2313 has caused damages to Atlantix of at least $146,997.50, which is the minimum amount that this Court should award in granting summary judgment.

### C. Summary Judgment Should be Granted in Favor of Atlantix on Wholesome Nut's First Counterclaim for Breach of Contract Because, Even Taken in the Light Most Favorable to Wholesome Nut, Atlantix Is Not Liable for Further Payments on a Shipment of Walnuts Adulterated with Metal Fragments.

As shown above, when the cases of walnuts shipped by Wholesome Nut were opened by Hampton Farms, the cases contained metal fragments intermingled with the already-shelled nuts, rendering the nuts unfit for human consumption.   Accordingly, Wholesome Nut breached both the Contract and the Guarantee.   Under basic contract principles, a party may terminate its performance under a contract (including payment obligations) if the other party to the contact

commits a material breach.  A breach is material if it goes to the essence of the agreement.  <u>See</u> <u>Federal Deposit Ins. Corp. v. Air Florida System, Inc.</u>, 822 F.2d 833, 840 (9th Cir. 1987).  It is hard to imagine a more material breach of a contract to provide a food product than shipping a food product tainted with metal fragments and unsafe for human consumption.

Wholesome Nut argues in its Counterclaim that Atlantix still owes to Wholesome Nut Company $16,275 pursuant to the parties' Contract—a fact that Atlantix denies.  Purely for the purposes of this Motion, because Atlantix must take the facts in the light most favorable to Wholesome Nut, Atlantix argues the sums remaining due on the Contract from Atlantix were voided and cancelled when Wholesome Nut shipped adulterated, and therefore useless, walnuts in breach of the Contract and Guarantee.  Moreover, in this situation, Wholesome Nut's breach excused any further performance/payment by Atlantix.  Indeed, it is ridiculous that Atlantix should pay <u>*more*</u> for useless, inedible nuts tainted with metal fragments, particularly where Atlantix was also forced by Wholesome Nut's breach to pay at least <u>**$146,997.50**</u> for the cost of the tainted nuts, replacement product, and warehousing tainted nuts.  Accordingly, summary judgment should be granted in favor of Atlantix on Wholesome Nut's Counterclaim.

### D. The Court Should Award Atlantix its Attorney's Fees and Costs Incurred in Bringing This Action.

The American public's right to food safety is an important right affecting the public interest, as evidenced by the numerous food safety laws embodied in the Food Safety Modernization Act, the Federal Food Drug and Cosmetic Act, and the Sherman Food, Drug and Cosmetic Law, among others.  In effect, by bringing and prevailing in this lawsuit, Atlantix is serving as a type of private Attorney General.

Under federal law, U.S. courts have the equitable power, in the absence of legislation, to award attorneys' fees in the interest of justice.  <u>Hall v. Cole</u>, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 36

L.Ed.2d 702 (1973); <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375, 391-392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).   Moreover, under the "private attorney general" doctrine, an award of attorneys' fees should be made to a litigant who (1) furthers the interests of a significant class of persons by (2) effectuating a strong congressional policy.   The award serves the purpose of encouraging such public-minded suits.   <u>See Newman v. Piggie Park Enterprises, Inc.</u>, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); <u>Brandenburger v. Thompson</u>, 494 F.2d 885, 888 (9th Cir. 1974).

California's Code of Civil Procedure Section 1021.5 also provides an exception to the general rule that each party to a lawsuit bears its own attorneys' fees.   <u>See Graham v. DaimlerChrysler Corp.</u>, 34 Cal.4th 553, 565 (2004).   Section 1021.5 provides that a court may award attorneys' fees to a successful party when the action has resulted in the enforcement of an important right affecting the public interest if:

> (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

By forcing Wholesome Nut to improve its food safety procedures, this lawsuit will confer an important and significant benefit on all present and future consumers of Wholesome Nut's products.   Moreover, it is necessary to enforce food safety laws for the good of the public. The financial burden of private enforcement in this case will likely be significantly more at the conclusion of this case than is warranted for a claim under $200,000 (at this point).   Such enforcement, which would benefit all future purchasers and downscale consumers of Wholesome Nut products, should not be the sole burden of Plaintiff.   Accordingly, it is appropriate to award attorneys' fees in this matter.   For the same reasons, attorneys' fees and

costs in this case should not be paid out of the recovery, if any, obtained by the plaintiff but should be independently awarded.  Accordingly, Atlantix, demands judgment against Defendant Wholesome, for the full amount of attorneys' fees and costs Plaintiff incurs as a result of this lawsuit; pre- and post-judgment interest thereon; and any other equitable and/or legal relief this Court deems equitable, just, and proper.

## V.   CONCLUSION

For the foregoing reasons, Atlantix submits that this Court should grant summary judgment in favor of Atlantix and against Wholesome Nut on all claims and counterclaims and order Wholesome Nut to pay damages to Atlantix of at least $146,997.50, plus Atlantix's reasonable attorney's fees and costs, as they may be payable under applicable law.  Atlantix also asks this Court to set a briefing schedule for the filing of Atlantix's motion for attorney's fees and costs.

Dated: June 28, 2019                    Respectfully submitted,

BURRIS & SCHOENBERG LLP

/s/ Donald S. Burris
Donald S. Burris, Esq.

*Attorneys for Plaintiff/Counter-Defendant*
*Atlantix Commodities, LLC*

1
2
3

4                          **<u>CERTIFICATE OF SERVICE</u>**

5       I hereby certify that on July 1, 2019, I electronically filed the foregoing documents

6   with the Clerk of the Court by using the CM/ECF system, which will send notification of

7   such filing to the e-mail addresses denoted below:

8

9       Stephen V. Imburg
        Imburg Law Firm, PLC
10      steve@imburglaw.com

11

12      I certify under penalty of perjury under the laws of the United States of America that the

    foregoing is true and correct.
13

    Dated: July 1, 2019              Respectfully submitted,
14

15                                   BURRIS & SCHOENBERG LLP

                                     /s/ Donald S. Burris
16                                   Donald S. Burris, Esq.

17                                   *Attorneys for Plaintiff/Counter-Defendant*
                                     *Atlantix Commodities, LLC*
18

19
20
21
22
23
24
25

NOTICE OF MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT - 18